UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SYMANTEC CORPORATION,

        Plaintiff,

                                     CASE NO. 02-CV-73740-DT

      v.                              CHIEF JUDGE BERNARD A. FRIEDMAN
                                     MAGISTRATE JUDGE PAUL KOMIVES

COMPUTER ASSOCIATES
INTERNATIONAL, INC.,

        Defendant.

_____/


**REPORT AND RECOMMENDATION ON COMPUTER ASSOCIATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT OF LACHES (docket #114) AND SYMANTEC'S
MOTION FOR SUMMARY JUDGMENT ON COMPUTER ASSOCIATES' DEFENSES
OF (1) LACHES, (2) IMPLIED LICENSE, (3) WAIVER, AND (4) EQUITABLE
ESTOPPEL (docket #115)**

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       B.    *Summary Judgment Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       C.    *Laches* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       D.    *Equitable Estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       E.    *Implied License and Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
           1.    *Legal Standard–Implied Licenses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           3.    *Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
       F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*       \*       \*       \*       \*

I.      RECOMMENDATION: The Court should deny CA's motion for summary judgment of laches

(docket #114) and should grant Symantec's motion for summary judgment on CA's defense of laches,

equitable estoppel, implied license, and waiver (docket #115).

II.     REPORT:

A.      *Background*

In this patent infringement suit, plaintiff Symantec Corporation ("Symantec" or "plaintiff") alleges that products of defendant Computer Associates International, Inc. ("CA" or "defendant"), infringe on its rights under U.S. Patent No. 5,319,776 ("the '776 patent").  Currently pending before the Court are nine motions for summary judgment filed by the parties.[1]  This Report addresses CA's motion for partial summary judgment of laches (docket #114) and Symantec's motion for summary judgment on CA's defenses of laches, implied licence, waiver, and equitable estoppel (docket #115). The remaining motions are addressed in separate Reports being filed on this date.

As explained in my Opinion and Order construing the patent claims, the '776 patent was issued on June 7, 1994, and is entitled "In Transit Detection of Computer Virus with Safeguard."  The patent discloses twenty method claims, two of which, Claims 1 and 18, are independent claims and the remainder of which are dependent claims.  As briefly described by the Federal Circuit in a prior case involving the '776 patent, "[t]he claimed invention scans a body of data during its transfer, *i.e.*, before storage of the data with potential viruses on the destination storage medium. If the program detects signs of a virus during the scan, the program automatically blocks storage."  *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1350 (Fed. Cir. 2000) (*Hilgraeve I*); *see also*, *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1339 (Fed. Cir. 2001) (*Hilgraeve II*).

---

[1]The nine pending motions, all filed on November 9, 2004, are: (1) defendant's motion for summary judgment of unenforceability due to inequitable conduct (docket #113); (2) defendant's motion for summary judgment of laches (docket #114); (3) plaintiff's motion for summary judgment on defendant's defenses of laches, implied licence, waiver, and equitable estoppel (docket #115); (4) plaintiff's motion for summary judgment that Richard B. Levin is not an inventor (docket #116); (5) plaintiff's motion for summary judgment of no inequitable conduct (docket #117); (6) plaintiff's motion for summary judgment of no invalidity (docket #120); and (7-9) defendant's three motions for summary judgment on infringement with respect to three separate products which are the subject of plaintiff's infringement claims (docket #118, 119 & 121).

On November 9, 2004, CA filed a motion for partial summary judgment of laches. CA argues that Symantec's patent infringement suit is barred by laches because Symantec delayed an unreasonable amount of time in filing suit, and because CA has been prejudiced by the delay. Symantec filed a response to this motion on December 1, 2004, and CA filed a reply on December 20, 2004. Also on November 9, 2004, Symantec filed a motion for summary judgment on four defenses offered by CA: laches, implied license, waiver, and equitable estoppel. Symantec contends that there is no genuine issue of material fact with respect to any of these defenses, and that it is entitled to judgment as a matter of law with respect to each defense. CA filed a response to this motion on December 1, 2004, and Symantec filed a reply on December 13, 2004.

B.      *Summary Judgment Standard*

Any appeal from the Court's judgment in this case lies exclusively in the United States Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1). Accordingly, this Court is bound by the jurisprudence of the Federal Circuit as to those matters which relate to the Federal Circuit's exclusive jurisdiction. *See Kudlacek v. DBC, Inc.*, 115 F. Supp. 2d 996, 1019 (N.D. Iowa 2000); *Sample v. United States*, 838 F. Supp. 373, 375 (N.D. Ill. 1993) ("United States Court of Appeals, Federal Circuit, jurisprudence controls since the case would be appealed to the Federal Circuit."), *aff'd*, 65 F.3d 939 (Fed. Cir. 1995). However, the general standards governing summary judgment are controlled by the law of the regional circuit court–here the Sixth Circuit. *See Parental Guide of Tex., Inc. v. Thomson*, 446 F.3d 1265, 1268 (Fed. Cir. 2006); *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005).

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

3

FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought.  In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case."  *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense."  *Stat-Tech Liquidating Trust v. Fenster*, 981

F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.      *Laches*

The bulk of the parties' motions considered in this Report address CA's defense that Symantec's patent infringement suit is barred by the doctrine of laches. Both parties argue that they

are entitled to summary judgment on this defense.  For the reasons that follow, the Court should deny CA's motion for summary judgment and grant Symantec's motion for summary judgment.

> 1.     *Legal Standard*

Laches is "principally a question of the inequity of permitting the claim to be enforced–an inequity founded upon some change in the condition or relations of the property or the parties." *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892).  The doctrine of laches is founded on "the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." *Russell v. Todd*, 309 U.S. 280, 287 (1940); *see also*, *Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201 (1893) ("Court of equity, it has often been said, will not assist one who has slept upon his rights, and shows no excuse for his laches in asserting them.").

The standard governing the laches defense in patent infringement suits was established by the Federal Circuit in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).  In that case, the Federal Circuit considered the case en banc "to clarify and apply principles of laches and equitable estoppel" in patent cases.  *Id*. at 1028.  As summarized by the court, five holdings relevant to the laches defense arise from *A.C. Aukerman*:

> 1.  Laches is cognizable under 35 U.S.C. § 282 (1988) as an equitable defense to a claim for patent infringement.
> 2.  Where the defense of laches is established, the patentee's claim for damages prior to suit may be barred.
> 3.  Two elements underlie the defense of laches: (a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay.  The district court should consider these factors and all of the evidence and other circumstances to determine whether equity should intercede to bar pre-filing damages.
> 4.  A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity.
> 5.  A presumption has the effect of shifting the burden of going forward with evidence, not the burden of persuasion.

*Id*.

More fully, the court explained that "[t]he application of the defense of laches is committed to the sound discretion of the district court." *Id*. at 1032. Because the defense of laches is equitable in nature, the defense has "flexibility in its application" and a court analyzing a laches defense "must look at all of the particular facts and circumstances of each case and weigh the equities of the parties." *Id*. At a minimum, however, the proponent of the defense must establish two elements: (1) unreasonable and inexcusable delay in filing suit on the part of the patent holder; and (2) prejudice to the defendant arising from the delay. *See id*.

With respect to the first factor–inexcusable delay–"[t]he length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Id*. The length of delay is measured from "the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit," although regardless of the patent holder's knowledge "the period does not begin prior to issuance of the patent." *Id*. As this statement indicates, actual knowledge is not required. As the Supreme Court has explained in another context involving the laches defense, "where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893); *see also*, *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1337-38 (Fed. Cir. 1998). Thus, "[a]lthough laches will not bar a patentee whose ignorance is justifiable, ignorance will not insulate him from constructive knowledge of infringement in appropriate circumstances." *Id*. at 1338.

With respect to the second element–prejudice–the Federal Circuit recognized two types of prejudice which may be sufficient to support a laches defense: evidentiary prejudice and economic

7

prejudice. *See A.C. Aukerman*, 960 F.2d at 1033. "Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id*. Economic prejudice, on the other hand, focuses not on the defendant's ability to defend the infringement suit, but on actions taken in the market. Thus, "[e]conomic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id*. This prejudice must be something more than the damages or losses which arise from a finding of liability; rather, "[t]he courts must look for a *change* in the economic position of the alleged infringer during the period of delay." *Id*.

Although these two factors–inexcusable delay and prejudice–must generally be shown to establish the laches defense, "a delay of more than six years raises a presumption that it is unreasonable, inexcusable, and prejudicial." *Wanless*, 148 F.3d at 1337 (citing *A.C. Aukerman*, 960 F.2d at 1035-36). This presumption is just that, however–a *presumption*. It does not conclusively establish the applicability of the laches defense. As with other presumptions, *see* FED. R. EVID. 301, the presumption of laches may be overcome by the patentee. As the Federal Circuit explained:

> This presumption shifts to the patentee the burden of producing evidence, which if believed, would show that either the patentee's delay was reasonable or excusable under the circumstances or the defendant suffered neither economic nor evidentiary prejudice. Whenever the presumption arises, including in the summary judgment context, the patentee's evidence must be sufficient to raise a genuine issue of material fact about either the excuse for or reasonableness of the delay, or the existence of prejudice.

*Id*. (citing *A.C. Aukerman*, 960 F.2d at 1037-38). Thus, "[b]y raising a genuine issue respecting either factual element of a laches defense, the presumption of laches is overcome." *A.C. Aukerman*, 960 F.2d at 1038. Importantly, however, "[e]limination of the presumption does not mean the patentee

precludes the possibility of a laches defense; it does mean, however, that the presumption plays no

role in the ultimate decision." *Id*. at 1038.

Further, "[i]t must be emphasized that the establishment of the factors of undue delay and

prejudice, whether by actual proof or by the presumption, does not *mandate* recognition of a laches

defense in every case." *Id*. at 1036. As the court explained,

> Laches remains an equitable judgment of the trial court in light of all the
> circumstances. Laches is not *established* by undue delay and prejudice. Those factors
> merely lay the foundation for the court's exercise of discretion. Where there is
> evidence of other factors which would make it inequitable to recognize the defense
> despite undue delay and prejudice, the defense may be denied.

*Id*. For example, a court should "consider and weigh any justification offered by the plaintiff for its

delay," such as other litigation, negotiations with the defendant, dispute over ownership, and the like,

and whether such reasons were communicated to the defendant. *Id*. at 1033. Likewise, a court should

consider whether the defendant itself has engaged in any inequitable conduct which would make its

reliance on the equitable doctrine of laches inappropriate. *See id*.

At the summary judgment stage, summary judgment for either party on a laches defense is

appropriate only if there is "no genuine issue of material fact, the burden of proof of an issue [is]

correctly allocated, and all pertinent factors [are] considered." *Id*. at 1039. Where established, laches

bars only damages arising from infringement prior to the filing of the suit. *See id*. at 1041.

    2.   *Analysis*

The starting point for the Court's analysis is to identify the period of delay. CA argues that

the period of delay begins in June 1995, by which time Cheyenne Software, a company bought by CA

in 1996, had openly and notoriously marketed real-time antivirus software for nine months. *See* CA's

Br. in Supp. of Mot. for Partial Summ. J., Exs. 1-4. CA argues both that it may "tack on" the period

of alleged infringement by Cheyenne Software prior to its acquisition of Cheyenne, and that because

Symantec purchased the '766 patent from Hilgraeve, Symantec is charged with Hilgraeve's dilatory conduct for purposes of the laches defense.  Symantec responds that there is no evidence that Hilgraeve had any actual knowledge of Cheyenne's products, and that CA's evidence of marketing activities is insufficient to constitute constructive knowledge.  Symantec also argues that it is not seeking any damages related to the Cheyenne products, and that CA is therefore "merely trying to bootstrap itself into a defense based upon products that are not in dispute and for which it refused all discovery on the grounds that such products were irrelevant."  Symantec's Br. in Opp'n to CA's Mot. for Partial Summ. J., at 3.

The Court need not determine whether Symantec should be charged with knowledge of Cheyenne Software's products because CA has failed to show how these products are relevant to Symantec's knowledge of the allegedly infringing products which are the subject of this suit. Symantec does not allege any infringement based on the Cheyenne Software products.  CA has cited, and I have found, no cases finding sufficient knowledge to commence the laches period based on knowledge of products which are not alleged to have infringed the patent at issue.  On the contrary, such a rule would run counter to the concept of the laches defense.  Laches is premised on a plaintiff's lack of diligence in pursuing a particular right or claim.  For this reason, laches is a claim specific defense. *See Wanless v. Fedders Corp.*, 145 F.3d 1461, 1468 (Fed. Cir. 1998) (Rader, J., concurring). Thus, knowledge of one claim does not in itself provide knowledge of a separate, distinct claim.

Although the Federal Circuit has not directly confronted this issue in a published decision, its statement of the laches defense supports this conclusion.  As the court has repeatedly observed, "delay begins when the plaintiff knew, or in the exercise of reasonable diligence should have known, of the defendant's *allegedly infringing activity*."  *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997), *abrogated in part on other grounds by Cyber Corp. v. FAS Tech.*,

10

138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); *see also*, *A.C. Aukerman*, 960 F.2d at 1032. Further, although there is a lack of support for CA's position, at least two decisions support the conclusion that knowledge of a different act of infringement is insufficient to constitute knowledge with respect to the product at issue in the infringement suit.

In *Altech Controls Corp. v. Eil Instruments, Inc.*, 8 Fed. Appx. 941 (Fed. Cir. 2001), the court considered a patent disclosing a method and apparatus for controlling a multicompressor supermarket refrigeration system. The patentee alleged that three of the defendant's products infringed the patent: the RC-48, RC-1000, and RC-2000 controllers. With respect to the defendant's assertion of laches, the court concluded that the patentee's claims of infringement with respect to the RC-48 controller were barred after applying the presumption of laches. *See id*. at 947. However, the court also concluded that this finding did not carry over to the infringement claims relating to the RC-1000 controller. That controller, the court noted, was developed later, within four years of the commencement of the suit. Because there was no evidence of unreasonable delay with respect to this controller, the patentee's infringement claims were not barred. *See id*. Thus, the court conducted separate laches analyses based on the patentee's knowledge of the two distinct products.

Similarly, in *Ardisam, Inc. v. Ameristep, Inc.*, 302 F. Supp. 2d 991 (W.D. Wis. 2004), the alleged infringer sought to invoke a laches defense based on the patentee's knowledge of a prior infringing product for which the patentee did not seek damages. The patent covered a particular design for hunting blinds. In 2000, the patentee determined that the defendant's design did not infringe the patent, and thus the patentee did not file suit. Later, the patentee did file suit, and the defendant argued that the patentee's knowledge of its prior hunting blind gave rise to knowledge of its allegedly infringing activity. The court rejected this claim, explaining that there was no evidence to contradict the plaintiff's assertion "that the alleged infringing hunting blinds are different from

11

those viewed by the plaintiffs in early 2000." *Id*. at 998.  The earlier conduct was insufficient to give

the plaintiff knowledge of the allegedly infringing activity which was the subject of the plaintiff's suit,

and thus the laches defense was inapplicable.  *See id.*

These cases are instructive here.  As in *Altech* and *Ardisam*, the products which Symantec

alleges infringe the patent are different from the products which CA claims gave Symantec notice of

its allegedly infringing activity.  In short, "because plaintiff is not charging [the Cheyenne Software]

product[s] . . . with infringement, plaintiff's knowledge of th[ese] product[s] cannot be used as a

marker for laches in the present suit."  *Haworth, Inc. v. Herman Miller, Inc.*, 856 F. Supp. 354, 356,

*reconsideration granted in part on other grounds*, 895 F. Supp. 185 (W.D. Mich. 1994).  Thus, the

Court should conclude that Symantec's alleged knowledge of the Cheyenne Software products, even

if proved, is insufficient to constitute knowledge of CA's allegedly infringing activity for purposes

of the laches defense.

Further, the fact that Symantec cites to Cheyenne Software's pre-1996 activities as evidence

of CA's willful infringement does not alter this conclusion, because the laches and willful

infringement inquiries focus on different matters.  Willful infringement focuses on the infringer's

knowledge of the patentee's rights.  On the contrary, laches focuses on the patentee's knowledge of

the infringer's actions.  Regardless of whether Cheyenne Software's pre-1996 activities bear

evidentiary weight with respect to the willful infringement inquiry–a subject I make no judgment

on–those activities do not establish Symantec's knowledge of CA's allegedly infringing activities for

the reasons discussed above.

Apart from the presumption of laches argument, CA argues only that Symantec had knowledge

of its allegedly infringing activities as evidenced by a licensing letter sent from Hilgraeve to Cheyenne

Software.  Again, however, there is no indication that this licensing letter related in any way to the

12

products that are in issue in this suit, and CA makes no such argument in its brief.  CA does not

identify any other point in time at which Symantec or Hilgraeve acquired either actual or constructive

knowledge of the infringing activities at issue in this suit.  As noted above, CA bears the burden of

proving, *inter alia*, that Symantec delayed bringing suit for an unreasonable length of time.  *See A.C.

Aukerman*, 960 F.2d at 1032.  This necessarily includes the burden of establishing when the delay

begins.  To avoid summary judgment, therefore, CA is required to produce sufficient evidence to

demonstrate a genuine issue of material fact as to when Symantec had actual or constructive

knowledge of CA's allegedly infringing activity.  Aside from Hilgraeve's alleged knowledge of the

Cheyenne Software products, which is insufficient as a matter of law, CA has presented no such

evidence.  Accordingly, the Court should conclude that CA's laches defense fails as a matter of law,

and the Court should deny CA's motion for summary judgment and grant Symantec's motion for

summary judgment on this issue.

D.      *Equitable Estoppel*

Symantec next argues that it is entitled to summary judgment on CA's equitable estoppel

defense.  For the reasons that follow the Court should grant Symantec's motion with respect to this

defense.

        1.      *Legal Standard*

Equitable estoppel "is closely related to laches . . . .  However, the courts recognize a clear

distinction between estoppel and laches." 6 DONALD S. CHISUM, A TREATISE ON THE LAW OF

PATENTABILITY, VALIDITY, AND INFRINGEMENT § 19.05[3][a], at 19-643 (2005).  The principal

practical difference between the two doctrines is that unlike laches, which bars only pre-filing

damages, "[w]here equitable estoppel is established, all relief on a claim may be barred."  *A.C.

Aukerman*, 960 F.2d at 1041.  This includes both post-filing monetary damages and prospective

13

injunctive relief. *See Adelberg Lab., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1273 (Fed. Cir. 1990).

Like the laches defense, the contours of the equitable estoppel defense were established by the Federal Circuit in *A.C. Aukerman*. Prior to that case, some Federal Circuit cases had adopted a test for equitable estoppel which made it a subset of the laches defense. Under this test, a defendant was required to establish the two elements of the laches defense–inexcusable delay and prejudice–as well as the additional elements of conduct by the patentee which induced the defendant to believe that the patentee had abandoned its infringement claims, and reliance on this inducement by the defendant. *See A.C. Aukerman*, 960 F.2d at 1042 (discussing prior cases). The court rejected this approach in *A.C. Aukerman*, concluding that it "confusingly intertwines the elements of laches and equitable estoppel." *Id*. While inexcusable delay might be relevant in analyzing an equitable estoppel defense, it is not a requirement of that defense, and even where it is present "the concepts of equitable estoppel and laches are distinct from one another." *Id*. Summarizing its holding on the equitable estoppel issue, the court explained that

> Three elements must be established to bar a patentee's suit by reason of equitable estoppel:
> a. The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.
> b. The alleged infringer relies on that conduct.
> c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*Id*. at 1028.

The first element–misleading conduct–generally requires conduct which communicates to the alleged infringer "that the accused infringer will not be disturbed by the plaintiff patentee in the activities in which the former is currently engaged." *Id*. at 1042. As the court explained, to satisfy this element "[t]he patentee's conduct must have supported an inference that the patentee did not

intend to press an infringement claim against the alleged infringer," and for this reason "the alleged infringer cannot be unaware–as is possible under laches–of the patentee and/or its patent." *Id*. Although inaction can support an equitable estoppel defense, inaction or silence alone is not sufficient. Rather, a patentee's inaction or silence "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id*.

The second element–reliance–requires the alleged infringer to "show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *Id*. To satisfy this element, it is not sufficient to show prejudice; for example, an alleged infringer who builds a plant to produce an infringing product may be prejudiced by the patentee's later assertion of his rights, but if the plant was not built in reliance upon the patentee's misleading conduct the infringer cannot establish an equitable estoppel defense. *See id*. at 1043. Thus, "[t]o show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security[.]" *Id*. Finally, the third element–prejudice–mirrors the prejudice element of the laches defense. Thus, "[a]s with laches, prejudice may be a change of economic position or loss of evidence."

Contrary to the laches defense, "no presumption adheres to an equitable estoppel defense. Despite a six-year delay in suit being filed, a defendant must prove all of the factual elements of estoppel on which the discretionary power of the court rests." *Id*. However, as with laches, estoppel is an equitable defense "addressed to the sound discretion of the trial court" and thus "is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." *Id*. at 1041. And, as with laches, a defendant who establishes the elements of equitable estoppel is not automatically entitled to prevail on the defense. Rather, the court must still "take into consideration

15

any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Id*. at 1043.

  2. *Analysis*

  Symantec argues that CA has failed to offer any evidence to support its equitable estoppel defense. Specifically, Symantec argues that "CA has no evidence, and has not even alleged, that Hilgraeve communicated anything to it in a misleading way." Symantec's Br. in Supp. of Mot. for Summ. J. on CA's Defenses, at 10. CA counters that Symantec's response to its Interrogatory No. 9 contends that CA became aware of its infringement of the '776 patent through licensing letters sent by Hilgraeve to Cheyenne Software on October 4, 1996, and March 27, 1997. *See* CA's Br. in Supp. of Opp'n to Symantec's Mot. for Summ. J. on CA's Defenses, at 10, Ex. 1 at 13. While CA denies that it or Cheyenne ever received these letters, it contends that Symantec is stuck with its response to Interrogatory No. 9 for purposes of this motion, and that if the interrogatory response is true, "and since Hilgraeve had no further contact with Cheyenne or Computer Associates prior to this lawsuit, Hilgraeve's conduct would certainly support" its equitable estoppel defense. *Id*. at 10. The Court should reject CA's argument and conclude that Symantec is entitled to summary judgment on this defense.

  With respect to this issue, both parties are attempting to walk a fine line. For purposes of its willful infringement claim, Symantec is relying on the purported licensing letters sent to Cheyenne to show that CA had knowledge of its infringing activities as early as 1996. At the same time, Symantec argues in this motion that CA did not know of the patent until it sued CA in 2002, and therefore there could have been no misrepresentations giving rise to an equitable estoppel defense. CA similarly denies that it received any licensing letters, but argues that the purported existence of these letters gives rise to an equitable estoppel defense. The Court need not resolve this issue here,

however, because in either event Symantec is entitled to summary judgment.

As noted above, a necessary element of the equitable estoppel defense is a showing that "[t]he patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *A.C. Aukerman*, 960 F.2d at 1042.  If CA was unaware of the '776 patent, this element cannot be established.  *See id*. (to satisfy the first element of the equitable estoppel defense, "the alleged infringer cannot be unaware–as is possible under laches–of the patentee and/or its patent.").  Even assuming, however, that the licensing letters were in fact sent by Hilgraeve and received by Cheyenne, this alone would not create a genuine issue of material fact on the equitable estoppel defense.  It is true that if the licensing letters were such that CA or Cheyenne could reasonably infer from Hilgraeve's inaction following the letters that it did not intend to pursue its rights, the misrepresentation element could be established.  *See A.C. Aukerman*, 960 F.2d at 1043-44.  It is impossible to make this determination, however, because CA has offered no evidence as to the content of those letters.  More importantly, as with the laches defense it does not appear, and CA does not contend, that the licensing letters related to the products which are accused of infringing the patent in this suit.  Even if the licensing letters combined with Hilgraeve's (and Symantec's) subsequent inaction give rise to a misrepresentation concerning the products which were the subject of those letters, the letters and silence would not give CA a reasonable basis on which to infer that Symantec would not sue for infringement with respect to other products.  *See B. Braun Med., Inc. v. Abbott Lab.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997).  Thus, CA has failed to raise a genuine issue of material fact with respect to the misrepresentation element of its equitable estoppel defense.

Further, CA has failed to establish a genuine issue of material fact with respect to the reliance element of its equitable estoppel defense.  As the court made clear in *A.C. Aukerman*, it is not enough

17

to show a misrepresentation and prejudice; the alleged infringer must show a nexus between the two by demonstrating that the prejudice arose from its reliance on the patentee's misrepresentation. *See A.C. Aukerman*, 960 F.2d at 1042-43. Although CA argues the prejudice issue in connection with its laches defense, it offers no argument with respect to reliance. And, more importantly, CA offers no evidence to show that it relied on Symantec's alleged misrepresentation. Its evidence of prejudice alone is insufficient to establish this element, *see id.* at 1043 ("Reliance is not the same as prejudice."), as is a conclusory allegation of reliance, *see Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995). As the non-movant with the ultimate burden of proof on this issue, the burden is on CA to "set forth specific facts showing a triable issue." *Matsushita Elec. Indus.*, 475 U.S. at 587. Because CA has failed to meet this burden with respect to both the misrepresentation and reliance elements of its equitable estoppel defense, the Court should grant Symantec's motion for summary judgment.

E.    *Implied License and Waiver*

Symantec next argues that it is entitled to summary judgment with respect to CA's defense of implied license. For the reasons that follow, the Court should grant Symantec's motion with respect to this defense.

1.    *Legal Standard–Implied Licenses*

"A patent grants its owner the right to exclude other from making, using, or selling the patented invention. However, all or part of the right to exclude may be waived by granting a license." *Carborundum Co. v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995). "Although most license are express, a license may be implied," and "an implied license, like an express license, is a defense to patent infringement." *Id.* "An implied license signifies a patentee's waiver of the statutory right to exclude others from making, using, selling, offering to sell, or importing the patented

18

invention." *Winbond Electronics Corp. v. International Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001) (citing *Wang Lab., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997)). "An implied license may arise by equitable estoppel, acquiescence, conduct, or legal estoppel." *Id*. (citing *Wang Lab.*, 103 F.3d at 1580). "These labels describe not different kinds of licenses, but rather different categories of conduct which lead to the same conclusion: an implied license." *Wang Lab.*, 103 F.3d at 1580. However shown, "[a]n implied license finding requires a nexus between the patentee's purported waiver and the infringing action." *Winbond Electronics*, 262 F.3d at 1374. Further, "judicially implied license are rare under any doctrine." *Wang Lab.*, 103 F.3d at 1581.

    2.    *Analysis*

The Court should conclude that CA has failed to raise a genuine issue of material fact with respect to the implied license defense under any theory. With respect to an implied license by equitable estoppel, the elements of this defense are the same as the general equitable estoppel defense discussed above. *See Winbond Electronics*, 262 F.3d at 1374 (setting forth elements of implied license by equitable estoppel identical to equitable estoppel elements set forth in *A.C. Aukerman*). Thus, CA's defense of implied license based on equitable estoppel fails for the reasons explained above.

Nor can CA establish an implied license under an acquiescence or waiver theory. Although there appears to be no Federal Circuit law in the patent context discussing these theories, as a general matter both require some sort of active assent on the part of the plaintiff. Thus, a "waiver is the *intentional* relinquishment or abandonment of a known right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (internal quotation omitted) (emphasis added); *see also*. DAN B. DOBBS, LAW OF REMEDIES § 2.3(5), at 88 (2d ed. 1993). Similarly, acquiescence is generally "used to mean

something like a waiver accomplished by silence or inaction, an *intended* but only implicit abandonment of a known right." *Id*. (emphasis added). In the trademark context, for example, the courts have observed that "[a]cquiescence is the active counterpart to laches, a doctrine based on passive consent. Both doctrines connote consent by the owner to an infringing use . . . , but acquiescence implies active consent." *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex.*, 357 F.3d 441, 452 (4th Cir. 2004); *accord TMT N.A., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997); *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). Here, CA's laches and equitable estoppel defenses are based on Symantec's alleged failure to seasonably enforce its patent rights. CA presents no argument, nor any evidence, that Symantec intentionally acquiesced in CA's alleged infringement through its conduct or that Symantec intentionally and voluntarily relinquished it right to enforce its patent against CA. In the absence of such allegations and evidence, CA cannot establish an implied license by either acquiescence or waiver.

Finally, CA cannot establish an implied license by legal estoppel. "For a finding of implied license though legal estoppel, a patentee must have 'licensed or assigned a right, received consideration, and then sought to derogate from the right granted.'" *Winbond Electronics*, 262 F.3d at 1375 (quoting *Wang Lab.*, 103 F.3d at 1581). CA makes no allegation that Hilgraeve or Symantec licensed or assigned any right to CA which Symantec now seeks to derogate. Therefore, CA cannot establish an implied license by equitable estoppel. Accordingly, the Court should grant Symantec's motion for summary judgment with respect to CA's implied license defense.

    3.    *Waiver*

For the reasons discussed above regarding CA's inability to establish an implied license by waiver, CA is likewise unable to establish a separate defense based on waiver. Accordingly, the Court

20

should grant Symantec's motion for summary judgment with respect to CA's waiver defense.

F.     *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact with respect to at least one element of CA's laches and equitable estoppel defenses, and therefore that Symantec is entitled to summary judgment with respect to these defenses. Likewise, the Court should conclude that Symantec is entitled to judgment as a matter of law with respect to CA's implied license and waiver defenses. Accordingly, the Court should deny CA's motion for summary judgment of laches, and should grant Symantec's motion for summary judgment on CA's defenses of laches, equitable estoppel, implied license, and waiver.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically,

and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 8/31/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 31, 2006.

                    s/Eddrey Butts
                    Case Manager