UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYMANTEC CORPORATION,

       Plaintiff,

      v.

COMPUTER ASSOCIATES
INTERNATIONAL, INC.,

       Defendant.
_____/

CASE NO. 02-CV-73740-DT
CHIEF JUDGE BERNARD A. FRIEDMAN
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANT COMPUTER ASSOCIATES'
MOTION FOR SUMMARY JUDGMENT OF UNENFORCEABILITY OF THE '776
PATENT DUE TO INEQUITABLE CONDUCT (docket #113) and PLAINTIFF
SYMANTEC CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF NO
INEQUITABLE CONDUCT (docket #117)**

I.   RECOMMENDATION ................................................................ 1
II.  REPORT ............................................................................. 1
     A.   *Background* .................................................................. 1
     B.   *Legal Standard* .............................................................. 3
     C.   *Invalidity by Inequitable Conduct Generally* ................................. 5
     D.   *Analysis* .................................................................... 7
          1.   Matthew Gray's April 18, 1990 Declaration ............................... 7
          2.   Matthew Gray's August 12, 1992 Declaration .............................. 10
          3.   Donald Wakelin's April 18, 1990 Declaration ............................. 12
     E.   *Conclusion* .................................................................. 15
III. NOTICE TO PARTIES REGARDING OBJECTIONS ........................................ 15

\*   \*   \*   \*   \*

I.    RECOMMENDATION: The Court should grant Symantec's motion for summary judgment of no inequitable conduct (docket #117) and deny Computer Associates' motion for summary judgment of unenforceability due to inequitable conduct (docket #113).

II.   REPORT:

A.   *Background*

In this patent infringement suit, plaintiff Symantec Corporation ("Symantec" or "plaintiff")

alleges that products of defendant Computer Associates International, Inc. ("CA" or "defendant"), infringe on its rights under U.S. Patent No. 5,319,776 ("the '776 patent"). Currently pending before the Court are nine motions for summary judgment filed by the parties.[1] This Report addresses 1) defendant's motion for summary judgment on unenforceability due to inequitable conduct and; 2) plaintiff's motion for summary judgment on no inequitable conduct. The remaining motions are addressed in separate Reports being filed on this date.

As explained in my Opinion and Order construing the patent claims, the '776 patent was issued on June 7, 1994, and is entitled "In Transit Detection of Computer Virus with Safeguard." The patent discloses twenty method claims, two of which, Claims 1 and 18, are independent claims and the remainder of which are dependent claims. As briefly described by the Federal Circuit in a prior case involving the '776 patent, "[t]he claimed invention scans a body of data during its transfer, *i.e.*, before storage of the data with potential viruses on the destination storage medium. If the program detects signs of a virus during the scan, the program automatically blocks storage." *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1350 (Fed. Cir. 2000) (*Hilgraeve I*); *see also*, *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1339 (Fed. Cir. 2001) (*Hilgraeve II*).

On November 9, 2004, defendant Computer Associates file a motion for summary judgment

---

[1]The nine pending motions, all filed on November 9, 2004, are: (1) defendant's motion for summary judgment on unenforceability due to inequitable conduct (docket #113); (2) defendant's motion for summary judgment of laches (docket #114); (3) plaintiff's motion for summary judgment on defendant's defenses of laches, implied licence, waiver, and equitable estoppel (docket #115); (4) plaintiff's motion for summary judgment that Richard B. Levin is not an inventor (docket #116); (5) plaintiff's motion for summary judgment of no inequitable conduct (docket #117); (6) plaintiff's motion for summary judgment of no invalidity (docket #120); and (7-9) defendant's three motions for summary judgment on infringement with respect to three separate products which are the subject of plaintiff's infringement claims (docket #118, 119 & 121).

of unenforceability of the patent due to inequitable conduct, and Symantec filed a cross-motion for summary judgment of no inequitable conduct. On December 1, 2004, CA filed a response to Symantec's motion, and Symantec filed a response to CA's motion on December 7, 2004. The parties each subsequently filed a reply brief. For the reasons that follow, the Court should grant Symantec's motion and deny CA's motion.

B.    *Legal Standard*

Any appeal from the Court's judgment in this case lies exclusively in the United States Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1). Accordingly, this Court is bound by the jurisprudence of the Federal Circuit as to those matters which relate to the Federal Circuit's exclusive jurisdiction. *See Kudlacek v. DBC, Inc.*, 115 F. Supp. 2d 996, 1019 (N.D. Iowa 2000); *Sample v. United States*, 838 F. Supp. 373, 375 (N.D. Ill. 1993) ("United States Court of Appeals, Federal Circuit, jurisprudence controls since the case would be appealed to the Federal Circuit."), *aff'd*, 65 F.3d 939 (Fed. Cir. 1995). However, the general standards governing summary judgment are controlled by the law of the regional circuit court–here the Sixth Circuit. *See Parental Guide of Tex., Inc. v. Thomson*, 446 F.3d 1265, 1268 (Fed. Cir. 2006); *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005).

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact

is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought. In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992).

In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Invalidity by Inequitable Conduct Generally*

"Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a 'duty of candor and good faith' to the PTO." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006) (quoting 37 C.F.R. § 1.56(a) (2004)). "A breach of this duty may constitute inequitable conduct, which can arise from an

affirmative misrepresentation of material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive or mislead the PTO." *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006); *accord Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1226 (Fed. Cir. 2006); *M. Eagles Tool*, 439 F.3d at 1339-40. "Both of these elements, intent and materiality, must be proven by clear and convincing evidence." *M. Eagles Tool*, 439 F.3d at 1340. In other words, "[i]n order to establish inequitable conduct, [CA] must present clear and convincing evidence that the inventors failed to disclose material information with an intent to mislead the PTO." *Liquid Dynamics*, 449 F.3d at 1226 (internal quotation omitted); *see also*, *Novo Nordisk Pharms., Inc. v. Bio-Technology Gen'l Corp.*, 424 F.3d 1347, 1359 (Fed. Cir. 2005). However, while these two elements are necessary conditions for a finding of inequitable conduct, they are not alone sufficient. Rather, when the two elements are established, "the trial court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Purdue Pharma*, 438 F.3d at 1128. This balancing is done on a sliding scale: the higher the materiality, the less evidence of intent is necessary. *See Perdue Pharma*, 438 F.3d at 1128-29; *Novo Nordisk*, 424 F.3d at 1359.

The "inquiry into materiality is an objective one," and materiality "embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issues as a patent." *Liquid Dynamics*, 449 F.3d at 1226 (internal quotation omitted). In evaluating materiality, a court should be guided by the standard set forth in PTO Rule 56. *See Purdue Pharma*, 438 F.3d at 1129. Under this rule information is material to patentability when

> "It is not cumulative to information already of record or being made of record in the application, and

6

> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
> (i) Opposing an argument of unpatentability relied on by the Office, or
> (ii) Asserting an argument of patentability."

*Id.* at 1129 (quoting 37 C.F.R. § 1.56(b) (2004)).

"Intent is a subjective inquiry into whether the inventor knew the information was material and chose not to disclose it." *Liquid Dynamics*, 449 F.3d at 1227. "Direct evidence of intent to deceive or mislead the PTO is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances." *Purdue Pharma*, 438 F.3d at 1133-34 (internal quotation omitted). As the Federal Circuit has explained, "a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Id.* (internal quotation omitted). Nevertheless, "it is important to remember that materiality does not presume intent, which is a separate and essential component of inequitable conduct." *Id.* (internal quotation omitted); *see also*, *M. Eagles Tool*, 439 F.3d at 1340.

D.     *Analysis*

Defendant CA raises the claim of inequitable conduct with regard to three separate acts by plaintiff in obtaining the '776 patent: (1) Matthew Gray's April 18, 1990 declaration and the failure to disclose Mr. Richard Levin's purported "significant contribution" to the conception of the '776 Patent; (2) Matthew Gray's August 12, 1992 declaration; and (3) Donald Wakelin's April 18, 1990 declaration.

1.     *Matthew Gray's April 18, 1990 Declaration*

CA argues that Matthew Gray submitted a false declaration on April 18, 1990, by claiming

7

in a signed "Declaration and Power of Attorney" filed along with the '776 patent application to the PTO that he believed he was "an original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought." CA's Inequitable Conduct Br., at 2. CA contends that Gray knew or should have known that he was not "an original, first and joint inventor" of the a'776 patent, and that Richard Levin was the inventor. CA cites notes from a phone call made on February 12, 1990, by Gray to Levin as the source of the conception of the invention claimed in the '776 patent. *See id.*, Ex. 4. Symantec, on the other hand, argues that Gray believed he was an inventor when he submitted his declaration of April 18, 1990. Symantec refutes CA's characterization of Gray's deposition testimony of March 31, 2004, wherein Gray stated that his contribution to the '776 patent was that he "was part of discussions where [he and other Hilgraeve employees] came up with the ideas for features and capabilities that [Hilgraeve] might add to the software to protect [Hilgraeve's] customers from viruses; some of those ideas were [his]." CA contends this statement indicates Gray "could not identify, *with specificity*, any contribution that he made to the alleged invention of the '776 patent." CA's Inequitable Conduct Br., at 5.

Plaintiff responds claiming Gray discussed *known* virus solutions with Mr. Levin during their February 12, 1990, phone conversation. *See* Symantec's No Inequitable Conduct Br., at 4. Plaintiff also asserts that according to Levin's own testimony, Levin spent a great part of the conversation describing existing prior art solutions and "evangelizing" his own Checkup Anti-virus System program hoping to sell his product to Mr. Gray. *Id.*

CA has provided no evidence other than Gray's fourteen-year removed lack of knowledge of his specific contribution to the idea of the '776 patent and the disputed content of the phone conversation which took place between Gray and Levin in February 1990 to support its conclusion

that Gray could not have believed he was an "original, first and joint inventor" of the '776 patent at the time of the application to the PTO.  To conclude that Gray did not believe himself to be an inventor of the '776 Patent at the time of application because fourteen years after the statement in question Gray failed to identify with specificity his contribution to the '776 patent is untenable. Gray admitted that he was familiar with the state of the art of antivirus technology at the time of the application for the '776 patent due in large part to his reading on the subject and discussions with those knowledgeable in the field of then-current antivirus technology.  The evidence indicates that Mr. Levin was one of these people knowledgeable in the field.  Yet, even the notes of the phone conversation between Mr. Levin and Mr. Gray in February 1990 only seem to indicate discussion about then-current antivirus technology.  Nowhere in the notes of the conversation does it indicate that Gray learned of moving the scanning up into the file transfer protocols.  *See* CA's Inequitable Conduct Br., Ex. 4.  If, as CA contends, Gray had little or no knowledge of the state of the art of antivirus technology at the time, and Mr. Levin provided the idea that led to the '776 patent, it would only be reasonable to expect notes from the conversation to include details of the new idea. However, detailed notes of this nature are not found within Gray's daily record of events.  *See id*.

In addition, in order to establish that Gray's statement in April 1990 was a material misrepresentation or omission, defendant must demonstrate by *clear and convincing evidence* that Gray believed himself not to be the inventor of the '776 patent at the time of application to the PTO. Such an omission would be material because inventorship would be considered material to a reasonable examiner.  However, because defendant cannot meet the lower threshold required to substantiate its claim that Gray did not believe himself to be an inventor, it clearly cannot meet the higher threshold required to warrant a finding of misrepresentation by plaintiff to the PTO indicative

of inequitable conduct.

    2.    *Matthew Gray's August 12, 1992 Declaration*

CA also contends that Matthew Gray's declaration of August 12, 1992, was false because in paragraph 1 of his declaration, Gray stated the following:

> I also state that I am the President of Hilgraeve, Inc., and have practiced in the field of computer software and, more particularly, in the area of computer communications software for 10 years. As a consequence, I have become intimately familiar with the state of the art as it relates to computer viruses, computer virus detection and computer virus prevention.

CA's Inequitable Conduct Br., Ex. 13, at 1. CA argues that Gray misrepresented his knowledge of computer software, computer viruses, computer virus detection, and computer virus prevention. CA cites Gray's deposition testimony wherein Gray stated: (1) between 1990 and the time of the deposition he had acquired no skill in the design and development of antivirus technology; (2) he was a marketing and sales person, and "[d]esign and development were not [his] area of responsibility; (3) in 1990, he did not have a working knowledge as to the various computer software designs, or how they worked; and (4) there is no point in time when "[he] would have been so bold as to claim [he] has knowledge of the state of the art of anything." *Id*., Ex. 6, Dep. Tr. of Matthew Gray, at 14-17, 25.

CA argues that the present case is similar to *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984 F. 2d 1182 (Fed. Cir. 1983). In that case, the patentee submitted affidavits to overcome a determination of obviousness after an interview between the applicant's attorney and the patent examiner. However, in *Paragon*, there was a clear misrepresentation to the PTO because the affidavits were represented as those of "disinterested third parties," making them crucial to overcoming the patent examiner's rejection for obviousness. *See id.* at 1191. CA does not,

10

however, claim that the submission of articles by plaintiff lauding the technology of the '776 patent were misleading or misrepresentations akin to the purported "disinterested third parties" in *Paragon*. CA does not dispute the validity of the publications praising the technology of the '776 patent. Instead, CA contends that Gray's declaration would be material to a reasonable examiner because a reasonable patent examiner would have considered such information material to his decision to allow the application over an objection for obviousness.

However, taking CA's evidence and supporting material as true, they do not give rise to a conclusion that Gray's declaration to the PTO was either a material misrepresentation or intended to deceive the PTO. Gray's declaration says nothing of knowledge of design or development of antivirus technology. Nor does he state any knowledge of various computer designs. In addition, any person working in marketing and sales of a particular product or group of products for a period of ten years would likely gain substantial knowledge of what differentiates his company's products from competitors in the market. Most would likely consider their own similar knowledge to be "intimately familiar" with that area. In addition, the bulk of information provided to the patent examiner in the affidavits requested to overcome an "obviousness" rejection were articles from industry publications lauding the development of the technology embodied in the '776 patent. In light of these articles by disinterested third parties, Gray's declaration would not likely have had much impact, if any, on a reasonable examiner's determination to allow the patent to proceed. Therefore, CA does not present evidence which could lead one to reasonably conclude that Gray's declaration was a misrepresentation, or that there was a substantial likelihood that his statement would be material to a reasonable examiner.

    3.    *Donald Wakelin's April 18, 1990 Declaration*

Finally, CA contends that Donald Wakelin's declaration to the PTO that he reviewed and understood the contents of the patent application, "including the claims," was false. CA points to Wakelin's testimony in two depositions to support its conclusion that Wakelin made a false and misleading statement in the application to the PTO. CA first cites Wakelin's testimony that "the statements in the claims were so vague as to be practically unintelligible," and his statement that at the time the '776 patent was filed, he "really didn't understand what the claims were saying." CA's Inequitable Conduct Br., Ex. 8, Dep. Tr. of Donald Wakelin, at 32, 34. Symantec argues that Wakelin understood the patent application at the time it was filed and cites that fact that, when asked in his deposition, "Do you believe you understood everything that was written in the patent application before it was filed," Wakelin responded, "At the time, yes." Wakelin was then asked, "Do you understand claim one?" To which, Wakelin stated, "I understand it in general terms." Symantec's No Inequitable Conduct Br., Ex. 9, Dep. Tr. of Donald Wakelin, at 30, 32.

On the issue of materiality, CA contends that fully understanding one's claims in a patent application is material because the PTO Rules of Practice designate that an inventor's declaration include an affirmative statement that the inventor "understands the contents of the application, including the claims." 37 C.F.R. §1.63(b)(2). Citing to *Rohm & Hass Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983), defendant argues that "there is no room to argue that submission of false affidavits is not material." *Rohm & Haas*, 722 F.2d at 1571. However, defendant applies this statement out of context. In *Rohm & Haas*, the court clearly tied the materiality of the false affidavits to the plaintiff's request for expedited consideration of its patent application. *See id.*

CA argues that submission of a false affidavit to the PTO is sufficient to establish intent to deceive the PTO, and that submission of such an affidavit is material *per se*. However, the law on

12

this issue does not state that *any* misrepresented submission to the PTO, regardless of what a reasonable examiner would consider material to patentability, is material *per se*. As explained above, the Federal Circuit has generally maintained that the proper test for determining materiality to patentability is the objective "reasonable examiner" standard. This standard is nearly identical to the materiality standard adopted by the PTO. *See* 37 C.F.R. §1.56(b). According to this standard, information is deemed material only if there is substantial likelihood a reasonable examiner would have considered such information material to its decision to allow the patent. Wakelin's April 18, 1990, declaration is one made by every applicant to the PTO, and it would only be reasonable to conclude that applicants often may not fully understand the language of their claims as these are typically statements formulated by patent lawyers familiar with the process of submitting applications to the PTO, not necessarily statements made in the vernacular of those responsible for the invention. Therefore, Wakelin's failure to fully understand the language of the claim contents should not be confused for failure to understand the meaning of the claims, which *would* likely be considered material by a "reasonable examiner."

While it is true that any statements made to the PTO may be deemed material, materiality is more likely to be found when there has been a special request, such as expedition of the application by the patent office which required the patent examiner to rely more heavily on the statements in the declarations and affidavits than under normal circumstances. *See General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1411 (Fed. Cir. 1994). In *General Electro*, the plaintiff made false representations in its affidavits to the PTO in order to convince the PTO to grant General Electro's request for expedited application consideration. In the present case, plaintiff at no point requested expeditious treatment of its application, but merely provided affidavits and

declarations within the framework of the usual application process and later to overcome a rejection for obviousness. Contrary to the present case, the requested expedition of the application in *General Electro* was central to the court's finding of materiality. *See id.* at 1411. The defendant's comparison of the present circumstances to those in *General Electro* is therefore misplaced and inappropriate for the purpose of the issue of materiality.

In addition, Wakelin's declaration was made during plaintiff's first unsuccessful attempt to obtain the '776 patent, and had nothing to do with the patent examiner's rejection for obviousness, nor anything to do with the examiner's eventual acceptance of the application after the second amendment. Had a reasonable examiner known of Wakelin's understanding of the claims at the time of the application, there is not a substantial likelihood that the examiner would have denied the application.

Further, CA has failed to produce evidence which, if believed, would constitute clear and convincing evidence that Wakelin intended to deceive the PTO. The only evidence that CA proffers to establish intent to mislead the PTO is Wakelin's conflicting deposition testimony. Since it is unlikely Wakelin even misrepresented his understanding to the PTO, it is not reasonable to conclude that defendant can meet a threshold level of evidence to support defendant's conclusion that Wakelin intended to mislead the PTO. CA does not dispute that Wakelin developed the algorithm used in the '776 Patent. Rather, CA argues that Wakelin did not participate in the conception of the invention at the heart of the '776 patent, and that Wakelin simply implemented it into the product. *See* CA's Inequitable Conduct Br., at 19. However, as noted above the intent to deceive element is a subjective test. Thus, the issue is not whether Wakelin was an actual inventor of the '776 patent, but rather whether he in good faith believed himself to be an inventor at the time of application.

14

Defendant presents no evidence which could lead one to reasonably conclude that Wakelin did not believe himself to be an inventor, or that he did not have a good faith reason to believe that he was an inventor. Therefore, CA cannot establish its claim of inequitable conduct with respect to Wakelin's declaration.

E.   *Conclusion*

In view of the foregoing, the Court should conclude that CA has failed to raise a genuine issue of material fact with respect to whether Gray or Wakelin made any material misrepresentations to the PTO, or intended to deceive the PTO. Accordingly, the Court should deny CA's motion for summary judgment of unenforceability due to inequitable conduct and grant Symantec's motion for summary judgment of no inequitable conduct.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                       s/Paul J. Komives  
                                                       PAUL J. KOMIVES  
                                                       UNITED STATES MAGISTRATE JUDGE

Dated: 8/31/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 31, 2006.
>
>                                     s/Eddrey Butts  
>                                     Case Manager