UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYMANTEC CORPORATION,

      Plaintiff,

                                CASE NO. 02-CV-73740-DT

    v.                         CHIEF JUDGE BERNARD A. FRIEDMAN
                                MAGISTRATE JUDGE PAUL KOMIVES

COMPUTER ASSOCIATES
INTERNATIONAL, INC.,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON SYMANTEC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NO INVALIDITY (docket #120)**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       C.    *Invalidity by Prior Art Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            1.    *The Presumption of Validity and CA's Burden* . . . . . . . . . . . . . . . . . . . . . . . . . 9
            2.    *PKSFANSI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
               a. Whether PKSFANSI Constitutes Prior Art . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               b. Whether PKSFANSI Invalidates the Claims . . . . . . . . . . . . . . . . . . . . . . . . . 16
            3.    *Checkout* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            4.    *grep and egrep* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            5.    *Macintosh Software (SAM, Gatekeeper Aid, Virex INIT, & AntiToxin 1.13)* . . . . . . . 23
            6.    *Apple II GS Photonix* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            7.    *"Unexplained" Prior Art References* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
       E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

\*      \*      \*      \*      \*

I.     **RECOMMENDATION**: The Court should grant in part and deny in part Symantec's motion

for partial summary judgment of no invalidity. Specifically, the Court should grant the motion with

respect to: (1) the Apple II GS Photonix prior art; (2) the Macintosh prior art; and (3) the

unexplained prior art references identified in CA's supplemental response to Interrogatory No. 6.

The Court should deny the motion with respect to: (1) the PKSFANSI prior art; (2) the Checkout

prior art; and (3) the grep/egrep prior art.

II.    REPORT:

A.    *Background*

In this patent infringement suit, plaintiff Symantec Corporation ("Symantec" or "plaintiff") alleges that products of defendant Computer Associates International, Inc. ("CA" or "defendant"), infringe on its rights under U.S. Patent No. 5,319,776 ("the '776 patent"). Currently pending before the Court are nine motions for summary judgment filed by the parties.[1] This Report addresses Symantec's motion for partial summary judgment of no invalidity (docket #120). The remaining motions are addressed in separate Reports being filed on this date.

As explained in my Opinion and Order construing the patent claims, the '776 patent was issued on June 7, 1994, and is entitled "In Transit Detection of Computer Virus with Safeguard." The patent discloses twenty method claims, two of which, Claims 1 and 18, are independent claims and the remainder of which are dependent claims. As briefly described by the Federal Circuit in a prior case involving the '776 patent, "[t]he claimed invention scans a body of data during its transfer, *i.e.*, before storage of the data with potential viruses on the destination storage medium. If the program detects signs of a virus during the scan, the program automatically blocks storage."

_____

[1]The nine pending motions, all filed on November 9, 2004, are: (1) defendant's motion for summary judgment on unenforceability due to inequitable conduct (docket #113); (2) defendant's motion for summary judgment of laches (docket #114); (3) plaintiff's motion for summary judgment on defendant's defenses of laches, implied licence, waiver, and equitable estoppel (docket #115); (4) plaintiff's motion for summary judgment that Richard B. Levin is not an inventor (docket #116); (5) plaintiff's motion for summary judgment of no inequitable conduct (docket #117); (6) plaintiff's motion for summary judgment of no invalidity (docket #120); and (7-9) defendant's three motions for summary judgment on infringement with respect to three separate products which are the subject of plaintiff's infringement claims (docket #118, 119 & 121).

*Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1350 (Fed. Cir. 2000) (*Hilgraeve I*); *see also*, *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1339 (Fed. Cir. 2001) (*Hilgraeve II*).

On November 9, 2004, Symantec filed this motion for partial summary judgment of no invalidity. Symantec does not seek summary judgment *in toto* with respect to CA's claim that the '776 is invalid based on the prior art. Rather, Symantec seeks summary judgment with respect to CA's arguments that Claims 1 and 18 are invalidated by seven prior art references: (1) PKSFANSI; (2) Checkout; (3) grep/egrep; (4) SAM version 1.3; (5) Gatekeeper Aid version 1.0.1; (6) Virex INIT version 1.12; and (7) Antitoxin version 1.13. Symantec also seeks summary judgment with respect to what it refers to as "55 unexplained software programs raised in CA's interrogatory responses." CA filed a response to this motion on December 1, 2004, and Symantec filed a reply on December 13, 2004.

Following the Court's construction of the patent claims, the parties filed supplemental briefs. In its supplemental brief, filed on February 10, 2006, Symantec maintains that none of CA's prior art references invalidate the patent. In addition, Symantec specifically argues that the Apple II GS Photonix software does not invalidate the patent. CA filed its supplemental brief on March 7, 2006, arguing that it has raised a genuine issue of material fact with respect to each of the prior art references.

B.     *Legal Standard*

Any appeal from the Court's judgment in this case lies exclusively in the United States Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1). Accordingly, this Court is bound by the jurisprudence of the Federal Circuit as to those matters which relate to the Federal Circuit's exclusive jurisdiction. *See Kudlacek v. DBC, Inc.*, 115 F. Supp. 2d 996, 1019 (N.D. Iowa

2000); *Sample v. United States*, 838 F. Supp. 373, 375 (N.D. Ill. 1993) ("United States Court of Appeals, Federal Circuit, jurisprudence controls since the case would be appealed to the Federal Circuit."), *aff'd*, 65 F.3d 939 (Fed. Cir. 1995).   However, the general standards governing summary judgment are controlled by the law of the regional circuit court–here the Sixth Circuit. *See Parental Guide of Tex., Inc. v. Thomson*, 446 F.3d 1265, 1268 (Fed. Cir. 2006); *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005).

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."   *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   "A fact is material only if its resolution will affect the outcome of the lawsuit."   *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).   In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.   *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought. In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case."   *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).   To meet this burden, the

4

moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.    *Invalidity by Prior Art Generally*

A patent, once issued by the PTO, is presumed to be valid. *See* 35 U.S.C. § 282. "'A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence.'" *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) (quoting *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003)). Nevertheless, a patent may be invalidated if the subject matter was not properly patentable in the first instance. One requirement of patentability is novelty, or lack of anticipation of the invention in the prior art. Specifically, the Code provides in relevant part:

> A person shall be entitled to a patent unless–
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]

35 U.S.C. § 102.[2]

---

[2]For purposes of this motion, the parties use as the April 19, 1990, date on which the patent application was filed as the date of invention asserted in the patent. *See* Symantec's Br., at 8 n.2.

"Anticipation is a technical defense granted in this statutory language and requires a showing, by the party claiming anticipation, of actual identity of the later invention in prior art." *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Corp.*, 45 F. Supp. 2d 110, 120 (D. Mass. 1997). Thus, pursuant to § 102, "[a] patent is invalid as anticipated if every limitation in a claim is found in a single prior art reference." *Nystrom*, 424 F.3d at 1149; *accord Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005); *Bristol-Myers Squibb Co. v. Ben Venue Lab., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001); *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994). "This means that if a prior art reference lacks any claimed element, then as a matter of law a decisionmaker (whether in the patent office or in a court) cannot find anticipation." *United States Filter Corp. v. Ionics, Inc.*, 68 F. Supp. 2d 48, 54 (D. Mass. 1999). Further, to constitute anticipatory prior art, the reference must be enabling, that is, it must be such as to "enable one of skill in the art to make and use the claimed invention." *Bristol-Myers*, 246 F.3d at 1374; *see also*, *Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1342 (Fed. Cir. 2005); *Paulsen*, 30 F.3d at 1479. To qualify as a "printed publication" under § 102, the prior art reference must have been "'publicly accessible' during the [relevant] period." *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006). A document is "publicly accessible" if it "has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Id*. (internal quotation omitted).

To find anticipation, the prior art reference itself need not *expressly* refer to each claim limitation. "Thus, a prior art reference . . . may . . . anticipate by inherency . . . . [I]f the prior art

necessarily functions in accordance with, or includes, the claims limitations, it anticipates." *Id.* at

1376. Further, "[m]aterial not explicitly contained in the single prior art document may still be

considered for purposes of anticipation if that material is incorporated by reference into the

document." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

Nevertheless, "invalidity by anticipation requires that the four corners of a single, prior art document

describe every element of the claimed invention, either expressly or inherently, such that a person

of ordinary skill in the art could practice the invention without undue experimentation." *Id.*[3] In

short, anticipation is essentially the mirror of infringement: "that which would literally infringe if

later in time anticipates if earlier." *Bristol-Myers*, 246 F.3d at 1378. "The standard for measuring

claim anticipation is exacting." *Turbocare Div.*, 45 F. Supp. 2d at 120.

The ultimate determination of whether a prior art reference anticipates the claimed invention

is one of fact. *See Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995).

Nevertheless, the inquiry involves several subsidiary questions of law for the Court to resolve. For

instance, "[w]hether an anticipatory document qualifies as a 'printed publication' under § 102 is a

legal conclusion based on underlying factual determinations." *Bruckelmyer*, 445 F.3d at 1377.

Similarly, "[w]hether and to what extent material has been incorporated by reference into a host

document is a question of law." *Advanced Display*, 212 F.3d at 1283. In ruling on summary

---

[3]Importantly, the single prior art reference must embody each claim limitation to be
anticipatory. This differs from the obviousness inquiry under § 103, which permits a court to look
at the prior art as a whole to determine whether the claimed invention was obvious to those skilled
in the art. *See Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1372 (Fed. Cir. 2000).
The parties do not in the present motion raise any issues relating to obviousness under § 103, and
I therefore do not consider the matter here. *See Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d
1098, 1107 (Fed. Cir. 2003) (noting that "obviousness and anticipation are related, but are legally
distinct and separate challenges to a patent's validity.").

judgment, general and conclusory testimony does not suffice to establish invalidity.  Rather, as a general matter "testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.  The testimony is insufficient if it is merely conclusory."  *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002).

D.      *Analysis*

        1.      *The Presumption of Validity and CA's Burden*

        Before analyzing the particular pieces of prior art at issue in this motion, it is important to clarify the burdens which the parties bear.  As noted above, the '776 patent is presumed valid under § 282, and thus CA must establish its invalidity through clear and convincing evidence.  *See Nystrom*, 424 F.3d at 1149.  This clear and convincing evidence standard requires the party contesting validity to offer evidence which "could place in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are highly probable," *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal quotation omitted), and must be applied at the summary judgment stage, *see Anderson*, 477 U.S. at 254-55.  CA contends, however, that because the PTO did not consider the prior art upon which it relies to attack the validity of the patent, the presumption of validity does not apply.  This argument is mistaken.

        The presumption of validity in § 282 is a statutory command, and it is not qualified by any language which would suggest it is inapplicable where the patent was issued without consideration of the precise matter at issue in the lawsuit.  CA's argument confuses the § 282 presumption of validity with the separate deference given to the PTO's determinations based on the examiner's

9

supposed superior knowledge and experience.  With respect to the latter, the Federal Circuit has explained that "[w]here the PTO has considered a piece of prior art, and issued a patent notwithstanding that prior art, a court owes some deference to the PTO's decision." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1572 (Fed. Cir. 1992). The case upon which CA relies, *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984), does state that "[w]hen an attacker, in sustaining the burden imposed by § 282, produces prior art or other evidence *not* considered in the PTO, there is . . . *no reason to defer* to the PTO so far as *its* affect on validity is concerned." *Id.* at 1359 (emphasis in original).  The court made clear, however, that this lack of deference to the PTO does not affect the § 282 presumption of validity or the defendant's burden to prove invalidity by clear and convincing evidence.  The court explained that this lack of deference

> has no effect on the presumption or on who has the burden of proof.  They are static and in reality different expressions of the same thing – a single hurdle to be cleared. Neither does the *standard* of proof change; it must be by clear and convincing evidence or its equivalent, by whatever form of words it may be expressed.  What the production ov new prior art or other invalidating evidence not before the PTO does is to eliminate, or at least reduce, the element of deference due the PTO, thereby partially, if not wholly, *discharging* the attacker's burden, but neither shifting nor lightening it or changing the standard of proof.

*Id.* at 1360 (citation omitted) (emphasis in original).  The court summarized: "§ 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker.  The burden is constant and never changes and is to convince the court of invalidity by clear evidence." *Id.*  In short, "[r]egardless of the deference owed to the patent officer, . . . [the Court] must consider all admissible evidence in light of the clear and convincing standard by which patents must be proved invalid." *United States Filter Corp.*, 68 F. Supp. 2d at 52.

      2.     *PKSFANSI*

CA contends that the PKSFANSI program invalidates Claims 1-3, 6, 10, 14, 16, and 18. Symantec argues that PKSFANSI does not invalidate these claims because it (a) does not constitute statutory prior art under § 102, and (b) does not scan the digital data prior to storage. The Court should conclude there remain genuine issues of material fact with respect to the PKSFANSI program, and thus Symantec is not entitled to summary judgment.

### a. Whether PKSFANSI Constitutes Prior Art

The parties first dispute whether PKSFANSI constitutes prior art at all under § 102. As noted above, to constitute prior art the program must have been either (a) known, used, patented, or described in a publicly accessible printed publication prior to the date of invention, *see* 35 U.S.C. § 102(a), or (b) publicly used or sold, or described in a publicly accessible printed publication more than one year prior to the date of the patent application, *see* 35 U.S.C. § 102(b). In support of its argument that PKSFANSI constitutes statutory prior art, CA principally relies on three pieces of evidence:

- The testimony of Dr. Eugene Spafford, Symantec's expert, who testified that he had heard of PKSFANSI and believed that it was "around in 1989." CA's Br., Ex. 3, Dep. Tr. of Dr. Eugene Howard Spafford, at 158, 162.

- Two Usenet postings from August 1989: one dated August 2, 1989, by Keith Peterson reporting that he had posted a copy of the programs on the Internet at WSMR-SIMTEL20.Army.Mil, *see* CA's Br., Ex. 5, Decl. of Henry Spencer, at Ex. 2a at 6-7 & Ex . 2b at 6-7; and a second dated August 25, 1989, confirming the earlier posting of the PKSFANSI program and providing instructions for accessing the lending library, *see id.* at Exs. 3a & 3b.

- The PKSFANSI program itself, which bears a last modified date of July 30, 1989, bears an embedded copyright date of 1989, and whose revision history shows that the program was completed on July 30, 1989. CA's Br., Ex. 1, Decl. of Benjamin F. Goldberg, at ¶¶ 14-17.

Symantec contends that both Dr. Spafford's personal recollection and the embedded copyright date

in the PKSFANSI software are insufficient to establish that the software was publicly accessible, and that the remaining evidence relied on by CA is inadmissible hearsay.  CA responds that the Usenet postings are admissible hearsay under the residual hearsay exception, FED. R. EVID. 807.

To defeat summary judgment, the nonmoving party need not "produce evidence in a *form* that would be admissible at trial[.]" *Celotex Corp.*, 477 U.S. at 317 (emphasis added).  Nevertheless, the substantive "evidence itself must be admissible." *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).  Thus, for example, "[h]earsay evidence may not be considered on summary judgment." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).  Here, the statements of Keith Richardson reflected in the Usenet articles are presented through the affidavit of Henry Spencer.  Although Spencer's affidavit itself is not an admissible form of evidence, the question is whether Spencer, if called at trial, could testify as set forth in his affidavit as to the contents of the Usenet postings.  *See Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003) ("[W]e must decide whether Carter would be allowed to testify at trial regarding Murray's alleged comments").  Here, there is no question that Richardson's statements in the Usenet postings constitute hearsay–that is, they are out-of-court statements by someone (Richardson) other than the witness at trial (Spencer) offered to prove the truth of the matter asserted (that PKSFANSI was posted on the Internet, and thus publicly available.  *See* FED. R. EVID. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  And, there is no question that hearsay evidence is not admissible except as provided by the Rules of Evidence or other law.  *See* FED. R. EVID. 802.

Although Rule 803 contains a number of explicit exceptions to the hearsay rule, and Rule

804 contains various other exceptions applicable when the declarant is unavailable, Richardson's

Usenet postings do not appear to fall into any of these categories of admissible hearsay.  Thus, CA

relies on the residual, or "catch-all," exception set forth in Rule 807, which in relevant part provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

FED. R. EVID. 807.  Under this exception, "a hearsay statement must meet five requirements to be

admissible: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4)

the interests of justice; and (5) notice."  *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999);

*see also*, *Rush v. Illinois C. R.R. Co.*, 399 F.3d 705, 719 (6th Cir. 2005).  In determining whether

CA's evidence may be considered here, the Court need not definitively resolve whether the evidence

would be admissible at trial under Rule 807.  The summary judgment rule "does not require an

unequivocal conclusion that the evidence will be admissible at trial as a condition precedent to its

consideration on a summary judgment motion, nor need the evidence be judged on the same basis

as evidence at trial."  *Multi-Tech Sys., Inc. v. Hayes Microcomputer Prods., Inc.*, 800 F. Supp. 825,

844-45 (D. Minn. 1992) (internal quotation omitted); *see also*, *Corley v. Life & Cas. Ins. Co.*, 299

F.2d 449, 450 (D.C. Cir. 1961).  Further, because Rule 56 requires that the evidence be viewed in

the light most favorable to the nonmovant, "[a]ny doubts regarding admissibility are resolved in

favor of the party opposing summary judgment."  *United States v. Bell*, 27 F. Supp. 2d 1191, 1194

(E.D. Cal. 1998).

Under this liberal standard, the Court should consider CA's evidence pursuant to Rule 807.

Of the factors governing admissibility under Rule 807 set forth above, trustworthiness is the most important.  *See Hall*, 165 F.3d at 1110 ("Critical to the admission of a hearsay statement under [the residual exception] is a finding by the district court that the statement is trustworthy.").  Although a court should consider the totality of the circumstances surrounding the hearsay statement at issue, particularly relevant factors include "(1) the probable motivation of the declarant in making the statement; (2) the circumstances under which it was made; and (3) the knowledge and qualifications of the declarant."  *Id*.; *see also*, 5 JACK B. WEINSTEIN, FEDERAL EVIDENCE § 807.039[2][b], at 807-15 (2d ed. 1997). In examining these and other factors, a court should focus on "the extent to which the statement is prone to the four classic hearsay risks of (1) insincerity, (2) faulty perception, (3) faulty memory, and (4) faulty narration[.]" WEINSTEIN, *supra*, at 807-16.1; *see also*, *Headley v. Tilghman*, 53 F.3d 472, 477 (2d Cir. 1995).  Here, Richardson's hearsay statement was made contemporaneously with his purported uploading of the PKSFANSI program on the Internet, and was obviously made on personal knowledge.  It is a simple statement of a recent past act, and thus does not bear the risks of faulty perception, memory, or narration, and Richardson repeated the statement in a subsequent posting.  Further, nothing in Richardson's posting, nor any other evidence, suggests that Richardson would have had any motive to fabricate his claim to have posted the program on the Internet.  And, although Symantec questions the manner in which the Richardson postings were generated by CA's witnesses, that issue is irrelevant to the admissibility of the statements under Rule 807.  *See United States v. Barone*, 114 F.3d 1284, 1303 (1st Cir. 1997) ("[T]he focus of the trustworthiness inquiry is not on the in-court witness, but on the circumstances in which the declarant's out-of-court statements were made.").

The other factors also support the conclusion that the evidence is admissible for purposes of

14

this motion. "The materiality requirement in Rule 807 is merely a 'restatement of the general requirement that evidence must be relevant.'" *United States v. Peneaux*, 432 F.3d 882, 892 (8th Cir. 2005) (quoting McCormick on Evidence § 324 (5th ed. 2003); s*ee also*, Weinstein, *supra*, § 807.03[1], at 807-8 to 807-9. Here, there can be doubt that evidence of the PKSFANSI program's availability on the Internet is relevant to determining whether it was publicly available prior art under 35 U.S.C. § 102. Further, the evidence appears to be "more probative" of this issue "than any other evidence which [CA] can procure through reasonable efforts." Fed. R. Evid. 807(B). It is difficult to conceive of evidence more probative of the availability of the PKSFANSI program than contemporaneous statements as to its availability, particularly in light of Symantec's arguments that the program's copyright dates and witnesses' recollections are insufficient. Further, given the lapse of time involved, it is reasonable to presume that Richardson cannot himself be located through reasonable efforts or, if located, would have any recollection of the events at issue. The interests of justice requirement is merely a restatement of the requirement of Rule 102, *see United States v. Munoz*, 16 F.3d 1116, 1121 (11th Cir. 1994); *Robinson v. Shapiro*, 646 F.2d 734, 743 (2d Cir. 1981), which reflects the "general requirement" that the Rules of Evidence be applied so as to secure a "speedy, inexpensive and fair trial designed to reach the truth." *Munoz*, 16 F.3d at 1121. This requirement is fulfilled by admission of the evidence here in light of its importance and the lack of other probative evidence. Finally, while Rule 807 does require that notice of a party's intent to introduce a statement under Rule 807 be given prior to trial, the failure of a party to meet that requirement does not preclude consideration of the evidence at the summary judgment stage. *See Amcast Indus. Corp. v. Detrex Corp.*, 779 F. Supp. 1519, 1527 (N.D. Ind. 1991), *aff'd in part & rev'd in part on other grounds*, 2 F.3d 746 (7th Cir. 1993).

15

Thus, for purposes of this motion, the Court should conclude that the Usenet printouts reflecting Richardson's statements are admissible under Rule 807.[4]  And, that being the case, the Court should conclude that there is a genuine issue of material fact regarding the PKSFANSI program's status as statutory prior art.  Richardson's Usenet postings indicate that a copy of the program was placed on the Internet and indicated where the program could be found.  The publication of these postings appears to be in a forum frequented by those interested in the art, and regardless of whether this is ultimately the case, Symantec has made no argument otherwise.  *See IMX, Inc. v. LendingTree, LLC*, 405 F. Supp. 2d 479, 489 n.5 (D. Del. 2005) (citing *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1324 (Fed. Cir. 2002)) ("The relevant 'public' consists of those individuals who would be interested in the invention, or the relevant art.").  Further, the copyright date of the software and Spafford's recollection of the availability of the program, while insufficient in themselves to establish public accessibility, *see Hilgraeve, Inc. v. Symantec Corp.*, 217 F. Supp. 2d 964, 974-75 (E.D. Mich. 2003) (Gadola, J.), corroborate the Usenet evidence.  For these reasons, the Court should conclude that the PKSFANSI program constitutes prior art under § 102.

### b.  Whether PKSFANSI Invalidates the Claims

The Court should conclude that there remain genuine issues of material fact with respect to whether the PKSFANSI program anticipates the claims of the '776 patent.  Symantec argues that,

---

[4]This conclusion should not be taken to suggest a definitive ruling on the issue.  Although the parties address the matter in their briefs, they do not fully engage the factual and legal issues surrounding the question of whether this evidence is ultimately admissible.  As explained above, it is enough at this point to conclude that there is a sufficient basis for finding the evidence admissible that the Court must resolve any doubts in favor of CA, the nonmoving party.  The admissibility of this evidence should remain open to attack, such as through a properly filed motion in limine.

to the meet the limitations of the '776 patent, the PKSFANSI program must be used with "a modem

and modem software," as indicated by CA's expert.  *See* Symantec's Br., Ex. 5, Expert Report of

Professor Benjamin F. Goldberg, Ex. 5 at 1.  Symantec contends that the PKSFANSI documentation

presented by CA does not describe scanning data at it comes into a computer system via a modem,

but rather only describes the processing of data that is already resident in the computer system.

Specifically, in relevant part the PKSFANSI documentation describes the program as follows:

> PKSFANSI (PK Save ANSI) is a Terminate and Stay Resident program that
> disables ANSI Keyboard Key Reassignments, thereby preventing "ANSI bombs"
> embedded in any text file (such as README files) or output by any program.
> Normally, ANSI sequences that redefine the keyboard could be hidden inside
> ANY text file or program, and could be executed completely unnoticed until it is too
> late.  PKSFANSI intercepts calls to the ANSI.SYS or other ANSI device drivers, and
> filters out any keyboard reassignments, while allowing other ANSI sequences
> through unaltered.
> If a keyboard key reassignment is attempted, PKSFANSI will intercept the
> sequence and discard it.  PKSFANSI will also BEEP to alert you that a reassignment
> was attempted.

Symantec's Supp. Br., Ex. J.  Symantec argues, therefore, that the PKSFANSI program does not

"screen[] the transferred digital data prior to storage on the destination storage medium" as required

by the limitations of the patent claims.  CA responds that this documentation does not say how the

ANSI bomb finds it way into the computer in the first place, and that the program could be used to

screen data being transmitted over a phone line.  Relying primarily on Dr. Goldberg's opinion, CA

argues that those skilled in the art would have recognized this feature, and that in at least some

instances the PKSFANSI program did in fact operate in this manner.  *See, e.g.*, CA's Supp. Br., Ex.

8, Decl. of Benjamin F. Goldberg, ¶ 19 ("PKSFANSI receives and screens data sent to the console

for viruses, regardless of whether the data originated from a remote computer, or from a source

storage medium on the local computer.  In other words, as a computer receives data for display –

which is how a BBS operated – *that stream* of data is received and screened by PKSFANSI.").

At the outset, Symantec's argument that the PKSFANSI program was not in fact used as suggested by CA does not defeat CA's anticipation argument. "Anticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1380 (Fed. Cir. 2003); *see also*, *Novo Nordisk Pharms., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005). On the other hand, it is not enough for CA to show that the PKSFANSI program could have been used in a manner which anticipated the '776 patent. "If the prior art does not expressly set forth a particular element of the claim, that reference still may anticipate if that element is 'inherent' in its disclosure." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999). As the Federal Circuit explained however, inherency may be established only where it is clear "'that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.'" *Id.* (internal citation omitted) (quoting *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991)). Thus, the "critical inquiry" is whether the PKSFANSI program "discloses in an enabling manner" the on-the-fly screening claimed in the '776 patent. *Novo Nordisk*, 424 F.3d at 1356.

The Court should conclude that a genuine issue of material fact with respect to this question remains, and thus that Symantec is not entitled to summary judgment on this claim. Professor Goldberg opines that the PKSFANSI program was used to screen data as it was being sent to a computer over a modem line from an electronic bulletin board system (BBS), and that this screening

occurred prior to the data's storage or display on the receiving computer system. *See* CA's Supp. Br., Ex. 8, Decl. of Benjamin F. Goldberg, ¶¶ 11-12, 18-19. In his deposition Dr. Spafford, Symantec's expert, agreed that PKSFANSI can intercept data headed for the computer system and screen the data for predefined sequences. *See* CA's Supp. Br., Ex. 3, Dep. Tr. of Eugene Howard Spafford, at 161-62. These statements suggest that PKSFANSI was in fact capable of screening digital data prior to storage on the computer system in the manner disclosed in the '776 patent, and that it was operated in such a manner by those skilled in the art. There thus remains a genuine issue of material fact with respect to whether the PKSFANSI program anticipates the claims of the '776 patent, and the Court should therefore deny Symantec's motion for summary judgment with respect to the PKSFANSI program.

   3.   *Checkout*

CA asserts that the Checkout program invalidates Claims 1-8, 10, 13-14, 16, and 18-20 of the '776 patent. In its motion for summary judgment, Symantec argues that Checkout does not invalidate the claims of the patent because it fails to anticipate three limitations of the patent claims. Specifically, Symantec contends that Checkout does not: (1) require a transfer of data to a computer system; (2) perform screening of the transferred data prior to storage on the destination storage medium; and (3) automatically inhibit the screened digital data from being stored on the destination storage medium. CA argues that each of these arguments is without merit. The Court should conclude that genuine issues of material fact remain with respect to these issues, and thus that summary judgment is not appropriate.

In both his initial and supplemental declarations, Professor Goldberg opines, based on his examination of the Checkout source code and his experimentation using Checkout, that the

19

Checkout program scans the data in the computer's memory prior to the data being written to the destination storage medium. *See* CA's Br., Ex. 1, Goldberg Decl., ¶¶ 23, 26, 28-29. He also opines that, if no virus is found, Checkout automatically moves the data in the scanned file to the destination storage medium. *See id.*, ¶¶ 24, 27, 28. Finally, he opines that if Checkout identifies a virus, it inhibits storage of the transferred data by either not further moving the file at all, or by renaming the file and moving it to a separate storage medium for bad files which is not accessible by the operating system. *See id.*, ¶¶ 25. *See generally*, *id.*, Goldberg Decl. Ex. 4. This is the type of detailed, nonconclusory expert testimony sufficient to raise a genuine issue of material fact. *Cf. Schumer*, 308 F.3d at 1315-16 ("[T]estimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."). Further, Symantec's evidence–principally the testimony of John Bintz, the inventor of Checkout–does not alter this conclusion. Although he testified that it was possible to run Checkout in such a way that an infected file would be accessible to the computer system, this testimony simply raises a question of fact to be resolved at trial. Accordingly, the Court should conclude that Symantec is not entitled to summary judgment with respect to the Checkout program.

        4.     *grep and egrep*

CA next contends that the grep and egrep Unix utility programs (collectively "grep") invalidate Claims 1, 6-8, 10, 13-14, and 16 of the '776 patent. Symantec contends that grep does not invalidate the patent because it operates only on files already present in a computer system, and not on files transferred to a computer system as required by the patent claims. For the same reason, Symantec argues that grep does not screen the digital data prior to storage, nor does it automatically

inhibit the date from being stored on the destination storage medium. The Court should conclude that genuine issues of material fact exist with respect to the grep program, and therefore that Symantec is not entitled to summary judgment with respect to the grep prior art.

In his deposition, CA's expert testified that the actual presence of the file to be scanned on the computer system is a "precondition" to scanning the file using grep, and that the program cannot be run unless that user already had access and permission to open the file. *See* Symantec's Supp. Br., Ex. L, Dep. Tr. of Henry Spencer, at 61-65. In context, it is clear that Spencer was talking about the operation of grep in Unix Version 7. *See id*. at 65. In a supplemental declaration, Spencer explains that his answer was limited to Version 7, and that subsequent versions of Unix released in the 1980s were also equipped with grep and that with respect to these versions, "the input file could have existed on another computer system." CA's Br., Ex. 5, Decl. of Henry Spencer, ¶ D.5. Spencer also avers that under these versions "grep could receive its input from a *stream* on a Unix system rather than from a file." *Id*. ¶ D.6. Spencer's declaration alone, however, cannot raise a genuine issue of material fact. The only specific testimony concerning the operation of grep is Spencer's deposition testimony concerning the operation of that program in Unix Version 7, and CA has presented no evidence to rebut Spencer's testimony that, under Version 7, grep operated only on programs already resident on the computer system. Spencer's subsequent declaration that grep operated in a manner which would anticipate the claims of the '776 patent in other versions of Unix is insufficient to raise a genuine issue of material fact, because he avers only that when run under those versions, grep *could* have operated on files resident on a separate computer system or disk. He does not aver that it in fact did so, or that it was understood by those skilled in the art to embody the same limitations set out in the patent claims. More importantly, Spencer's declaration does not

21

"identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in" grep as operated under the subsequent versions of Unix. *Schumer*, 308 F.3d at 1315-16.

Thus, to establish a genuine issue of material fact on this issue CA must rely on the declaration of Professor Goldberg. The declaration itself, however, fails to provide the type of detailed information required by *Schumer*. With respect to grep, Goldberg avers that he "personally used grep in the 1987-88 timeframe [sic] to search for predefined sequences in data emanating from a source storage medium that was part of a remote computer. There were many versions of Unix available by 1989 that supported the grep/egrep facility operating on files residing on remote computer systems." CA's Br., Ex. 1, Decl. of Benjamin F. Goldberg, ¶32. This averment does not provide the type of specific, detailed information required by the Federal Circuit, and the Court must therefore turn to the chart provided as Exhibit 10 to Professor Goldberg's declaration. Professor Goldberg's chart does, however, provide that type of specific information required by the Federal Circuit, and thus is sufficient to overcome Symantec's motion for summary judgment. In his chart, Professor Goldberg describes in detail how grep/egrep embodies each of the limitations of the patent claims, based on his review of Spencer's expert report, personal experience, and examination of the grep/egrep source code. Importantly, Goldberg explicitly states that "grep/egrep causes the data resident in file 'input' on a source storage medium . . . to be transferred to a Unix workstation having a destination storage medium such as a hard disk," and that "[a]s the Unix workstation receives the data from the file 'input,' grep/egrep screens the data before it is stored in file 'output' . . . ." CA's Br., Ex. 1, Goldberg Decl., Ex. 10 at 1-2. Goldberg also describes grep as automatically storing the data on the destination storage medium if a predefined pattern is not found, and automatically

22

preventing storage if such a pattern is found. *See id*. at 2. This description constitutes evidence contradicting Symantec's contention that grep/egrep operated only on files already stored within the computer which is sufficient to withstand summary judgment.

      5.     *Macintosh Software (SAM, Gatekeeper Aid, Virex INIT, & AntiToxin 1.13)*

      CA next argues that four Macintosh programs–Gatekeeper Aid, AntiToxin, SAM, and Virex–invalidate Claims 1-3, 6-9, 13-14, 16, and 18-20. In his expert report, Professor Goldberg identifies four modes of operation of the Macintosh programs which anticipate the claims of the '776 patent: (1) "Scan on New Application" (Gatekeeper and AntiToxin); (2) "Scan on Mount" (SAM, Gatekeeper, and Virex); (3) "Scan on Open" (AntiToxin); and (4) "Scan on Execute" (SAM and Virex). Goldberg avers that "[i]n all modes of operation, the Mac programs both screen and store the 'transferred digital data recited in the claims." CA's Br., Ex. 5, Decl. of Benjamin F. Goldberg, ¶ 35. Symantec argues that these programs fail to anticipate the claims of the '776 patent because: (1) the programs do not automatically cause the screened digital data to be stored if no predefined sequence is found; and (2) the "Scan on New Application" mode of Gatekeeper and AntiToxin does not constitute prior art. The Court should conclude that CA has presented insufficient evidence that the Macintosh programs automatically stored the digital data as described in the patent, and that Symantec is therefore entitled to summary judgment.

      The descriptions provided by CA's own experts suggest that the Macintosh programs do not store the actual screened digital data after screening, but only a reference to the screened data. For example, with respect to the "scan on mount" operation, Chris Johnson states that the "screened" data is the "resource fork of the new application," while the "stored" data is the "icon, file types, signature, and version information." *See* Symantec's Supp. Br., Ex. H, Expert Report of Chris

23

Johnson, ¶ 57.  Professor Goldberg asserts that the stored data is the "resource data," but provides no further explanation of what this data comprises.  *See* Symantec's Br., Ex. 5, Expert Report of Benjamin Goldberg, at Ex. 7 at 3.  In his declaration, Professor Goldberg attempts to explain this statement by averring that the Macintosh programs screen and store the "transferred" digital data, but he provides no further explanation as to what data is actually screened and what data is actually stored.  *See* CA's Br., Ex. 1, Goldberg Decl., ¶ 35.  Johnson gives similar indications for the other theories of operation.  *See, e.g.*, Symantec's Supp. Br., Ex. 7, Johnson Report, ¶ 46, 51-52, 57-58; Ex. I, Dep. Tr. of Chris Johnson, at 176-77, 184, 191-92, 214.

CA attempts to avoid this conclusion through Professor Goldberg's assertion that it is the "resource data" which is being transferred and scanned, and that all of the "resource data" is stored following transfer and scanning.  CA argues that the fact that other data–*i.e.*, the executable file–is also scanned is irrelevant because the patent describes a "comprising" claim which does not exclude additional, unrecited elements.  However, nothing in Professor Goldberg's declaration provides any explanation for disaggregating the screened data.  On the contrary, the reason that the resource data is stored in RAM is to allow operation of the–in CA's view–unstored executable file, and it is the presence of a virus in the executable file which is the purpose of the scanning.  Under CA's view, the Macintosh programs transfer, scan, and store the resource data, while simply scanning without transfer or storage the executable file.  But it is equally clear that if the executable file is infected with a virus, then the resource data is not stored.  In light of this fact, it is impossible to conclude that these two "groups" of data can be considered separately, and nothing in CA's evidence suggests that it would be proper to do so.  CA has thus failed to present sufficient evidence that the Macintosh programs automatically store the transferred digital data to withstand summary judgment.

24

6.    *Apple II GS Photonix*

CA also contends that the '776 patent is anticipated by the Apple II GS Photonix program. Symantec argues that Photonix does not anticipate the patent claims because the Apple II GS did not have a destination storage medium, and the program did not store digital data.  The Court should agree.

It is not disputed that the Photonix program operated only on the Apple II GS computer, and that the Apple II GS did not have any internal storage medium such as a hard drive.  Rather, the Apple II GS functioned only with external floppy disk drives.  In construing the patent claims, the Court ruled that "destination storage medium" does not include a peripheral device which is connected to, but not a part of, the computer system, and that the "destination storage medium" cannot be located outside of the computer system.  *See* Opinion & Order, dated 3/16/05, at 18-19. CA nevertheless contends that the external floppy drive constitutes a destination storage medium within the patent claims because (a) unlike the thumb drive example noted by the Court in its claim construction, in the case of the Photonix program there is still only one, rather than two, transfers of digital data, (b) without the floppy disk drive, the Apple II GS would not be a complete "computer system," and (c) unlike the thumb drive example, the external disk drive of the Apple II GS is not an extraneous storage device attached to a computer which already has a destination storage medium, but rather *is* the computer's destination storage medium.  The Court should reject these arguments.

First, while the possibility of two transfers is a particular problem with including a peripheral device, the patent claims do not encompass any single transfer.  Rather, the claims encompass particular types of transfers, *i.e.*, those occurring within a "computer system" having a "destination

storage medium." Thus, even screening of a single transfer may fall outside the patent claims, and the Apple II GS system does not fall within the terms of the patent merely because only one transfer of data would be involved. Second, CA argues that the Apple II GS could not function without an external disk drive and thus it must be part of the system. Even if this is so, it is irrelevant because the storage medium is not the disk drive, but rather the floppy diskette upon which the digital data is written. There is no evidence that the Apple II GS could not function as a complete computer system without having a writable floppy diskette to save data. To be sure, such a computer system might be of limited utility–essentially serving as nothing more than an electronic typewriter or calculator–but this would not make the Apple II GS any less of a computer system as described in the patent. Finally, the argument that the floppy disk drive is the Apple II GS's destination storage medium, as opposed to a secondary storage system such as a thumb drive, also misses the mark because nothing in the patent itself or the evidence submitted by the parties leads to the conclusion that a computer system must have a "destination storage medium" to be a complete computer system. Indeed, the limitation of the patent claims to the transfer of digital data "to a computer system having a destination storage medium," '776 patent, col. 17 (Claim 1), suggests that a computer system can exist without a destination storage medium. In short, CA has not provided evidence which, if believed, would constitute clear and convincing evidence that the Photonix program operated on data transferred to "a computer system having a destination storage medium." Accordingly, the Court should grant Symantec's motion for summary judgment with respect to the Apple II GS Photonix prior art.

7.    *"Unexplained" Prior Art References*

Finally, Symantec contends that it is entitled to summary judgment with respect to 55 prior

26

art references identified by CA in its supplemental response to Symantec's Interrogatory No. 6. *See* Symantec's Br., Ex. 1. Because CA has failed to explain the relevance of any of these prior art references, Symantec contends that it is entitled to summary judgment that the "patent is not rendered invalid by any of the unexplained references, whether those references are taken alone or in combination with any other references." Symantec's Br., at 7. In its initial response, CA argued that Symantec's motion on this basis was premature because prior art discovery had not been completed and because the patent claims had yet to be construed. In its supplemental brief filed after the Court's claim construction, Symantec reasserts its argument that it is entitled to summary judgment with respect to the 55 unexplained prior art references. CA does not address these prior art references in its supplemental brief. The Court should conclude that Symantec is entitled to summary judgment with respect to these prior art references.

CA's prematurity arguments are no longer availing. The Court has now construed the patent claims, and there is no indication that prior art discovery is ongoing. CA is left, therefore, with its argument that "Symantec . . . has provided no analysis establishing that it is entitled to summary judgment on any of these additional references." CA's Br., at 18. Symantec, however, need not provide any such detailed analysis. As the Supreme Court has explained, Symantec's summary judgment burden is discharged by merely "'showing' –  that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once Symantec has done so, it is CA's burden to come forward with evidence of "specific facts showing a triable issue" with respect to each of the prior art references. *Matsushita Elec.*, 475 U.S. at 587. Here, Symantec discharged its summary judgment burden by pointing out that there is no evidence in the record to support CA's claim that the unexplained prior art

27

2:02-cv-73740-BAF-PJK   Doc # 230   Filed 08/31/06   Pg 28 of 29   Pg ID 11722

references invalidate the patent.  At that point, the burden shifted to CA to point to specific evidence in the record which raises a genuine issue of fact on all the elements of the anticipation and obviousness defenses with respect to each prior art reference.  CA has failed to do so, and Symantec is therefore entitled to summary judgment with respect to these prior art references.  *Cf. Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).

E.      *Conclusion*

        In view of the foregoing, the Court should grant in part and deny in part Symantec's motion for summary judgment of no invalidity.  Specifically, the Court should grant the motion with respect to: (1) the Apple II GS Photonix prior art; (2) the Macintosh prior art; and (3) the unexplained prior art references identified in CA's supplemental response to Interrogatory No. 6.  The Court should deny the motion with respect to: (1) the PKSFANSI prior art; (2) the Checkout prior art; and (3) the grep/egrep prior art.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2),

28

a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/31/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 31, 2006.

s/Eddrey Butts
Case Manager